UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| **NATHAN BRADLEY**<br>560 Meadows Branch Road<br>Salyersville, KY 41465<br><br>                PLAINTIFF,<br><br>v.<br><br>**UNITED PARCEL SERVICE, INC.**<br>55 Glenlake Parkway, N.E.<br>Atlanta, GA 30328<br><br>SERVE:    Corporation Service Company<br>              421 West Main Street<br>              Frankfort, KY 40601<br><br>                DEFENDANT. | Civil Action No:  7:20-CV-00066-REW-EBA |

## **AMENDED COMPLAINT AND JURY DEMAND**

Comes the Plaintiff, Nathan Bradley, by counsel, and for his Amended Complaint and Jury Demand against the Defendant, United Parcel Service, Inc., states as follows:

## **PARTIES**

1.    Plaintiff, Nathan Bradley, is and at all times pertinent hereto was a resident of Salyersville, Magoffin County, Kentucky.

2.    Defendant, United Parcel Service, Inc. (hereinafter "UPS"), is and at all times pertinent hereto was a foreign corporation organized and existing pursuant to the laws of the state of Georgia with its principal place of business located at 55 Glenlake Parkway, N.E., Atlanta, GA 30328 and doing business in Kentucky. UPS has identified Corporation Service

1

Company, 421 West Main Street, Frankfort, KY 40601 as its registered agent for service of process.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims made herein pursuant to 28 U.S.C. §1331 as this action arises under the provisions of Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12117(a) (hereinafter "ADA"), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C §2000e-5(f)(1) and (3), pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. Jurisdiction of this Court is also invoked under 28 U.S.C. § 1367, which provides supplemental jurisdiction for Mr. Bradley's claims under Kentucky law. Mr. Bradley's state law claims arise from the same nucleus of operative fact as his claims under federal law.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## STATEMENT OF PERTINENT FACTS

6. Plaintiff, Nathan Bradley, began working for Defendant at their Prestonsburg, KY facility in or around March 23, 2012 as a package handler. Plaintiff reported to Matt Goff, dispatcher.

7. Mr. Bradley was a qualified individual with a disability as defined by the ADA and who was able to perform the essential functions of his position with or without reasonable accommodation.

8. During the period of employment with Defendant, Mr. Bradley received excellent evaluations of his work performance.

9. On or about May 2, 2019, a less senior employee, with less than one-year experience, was selected over Plaintiff to work at the on-lot car wash. Plaintiff filed a grievance pertaining to this incident with the union on or about May 7, 2019. This grievance was resolved through a promise by Defendant to provide Plaintiff with training and test to qualify for the on-lot car wash.

10. On or about May 21, 2019, Plaintiff's supervisor, dispatcher Matt Goff, commented to Plaintiff that everyone knew Plaintiff's eyes were bad and that was why Plaintiff failed his road test in January 2017.

11. Throughout Plaintiff's employment, and on multiple occasions he was subjected to offensive and derogatory comments about his vision and speech, which were so severe and pervasive as to alter the terms and conditions of Plaintiff's employment with Defendant.

12. On or about September 25, 2019, Plaintiff attended a meeting in which eight (8) of his grievances were heard. During this meeting, Plaintiff was told by Union President Mike Watson to get a physical and then they could talk about driving for UPS. As of this meeting, Plaintiff had not received any training or test to qualify for the on-lot car wash.

13. On or about November 1, 2019, Plaintiff was informed by Eric Weston, Center Manager, that Plaintiff would not be permitted to take an on-road test because he didn't feel comfortable and that Plaintiff could not be trusted. In opposition to this unlawful discrimination, Plaintiff filed another grievance on November 8, 2019.

14. On or about November 5, 2019, Plaintiff's workload was increased from loading four (4) trucks to six (6) trucks.

15. On or about December 20, 2019, Plaintiff's employment with Defendant was terminated. The reason given to Plaintiff for his termination was dishonesty. Plaintiff filed a grievance, was reinstated, and returned to work on March 2, 2020.

16. On or about January 21, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") (Charge No. 473-2019-01730), attached hereto as **Exhibit A**, alleging the following:

> "I. I am a part-time Package Sorter and have been regarded as disabled. On or about May 21, 2019, Dispatcher, Matt Goff (Sp?) Made a comment about how everyone knows that my eyes are bad and that is the reason why I failed my road test. On or about September 25, 2019, I have not received training for On-Call-Lot Training, which I believe management has regarded me as disabled. On or about December 20, 2019, I was terminated.
>
> II. Management is responsible for the above action.
>
> III. I believe I have been discriminated and retaliated against in violation of the Americans with Disabilities act of 1990, as amended."

17. Plaintiff received his Notice of Right to Sue for his January 21, 2020 EEOC Charge of Discrimination on or after February 13, 2020, a copy of which is attached hereto as **Exhibit B**.

18. On or about March 20, 2020, shortly after the Defendant was made aware that the investigation related to Plaintiff's January 21, 2020 Charge of Discrimination had ended, Plaintiff was issued a letter stating that his employment had been terminated for unacceptable attendance after Plaintiff was told by his supervisor, Matt Goff, not to report to work. Despite this, Plaintiff was informed that it was a "working termination" and Plaintiff was permitted to continue working.

19. On or about March 27, 2020, Plaintiff filed a grievance regarding the termination letter he received on March 20, 2020.

20. On or about April 29, 2020, Plaintiff field a Charge of Discrimination with the EEOC (Charge No. 473-2020-01020), attached hereto as **Exhibit C**, alleging the following:

> "I. I have been regarded as disabled. During my employment I field a recent EEOC Charge, (473-2019-01730). On or about March 20, 2020, shortly after the Respondent was made aware that the investigation had ended, I was terminated. I believe the decision to terminate me was in retaliation for filing a previous charge.
>
> II. Management is responsible for the above action.
>
> III. I believe I have been discriminated and retaliated against in violation of the Americans with Disabilities act of 1990, as amended."

21. Plaintiff received his Notice of Right to Sue, dated September 1, 2020, for his April 29, 2020 EEOC Charge of Discrimination (Charge No. 473-2020-01020) on or about September 3, 2020, a copy of which is attached hereto as **Exhibit D**.

## COUNT I

### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, TITLES I & V

22. Plaintiff realleges each and every allegation set forth in paragraphs one through twenty-one of the Complaint as if fully set forth herein.

23. Plaintiff is a qualified individual with a disability within the context of the ADA as: (1) Plaintiff is a qualified individual with a disability; (2) Plaintiff was perceived and/or regarded by the Defendant as individual with a disability with limitations on his ability to effectively perform his job duties for the Defendant; and, (3) Plaintiff, either with or without reasonable accommodation, is qualified and capable of performing the essential functions of the job.

24. Defendant UPS is a "covered entity" within the meaning of Title I of the Americans with Disabilities Act of 1990 set forth at 28 U.S.C. § 12111.

25. The actions by UPS, as alleged above, constitute unlawful employment practices in violation of ADA §§ 102(a), 102(b)(1), 102(b)(5)(B), 503(a), 42 U.S.C §§ 12112(a), 12112(b)(1). 12112(b)(5)(B), and 12203(a). All conduct alleged above occurred during a legally cognizable time period at Defendant's facility. The practices include, but are not limited to (1) Defendant's refusal to grant Mr. Bradley an accommodation for his disability or perceived disability, (2 Defendant's refusal to provide on-call-lot training to Plaintiff, and (3) terminating Mr. Bradley's employment even though he was able to perform the essential functions of his position with or without reasonable accommodation. All of Defendant's actions were taken because of Mr. Bradley's disability or perceived disability.

26. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against him, Mr. Bradley has suffered and will continue to suffer pain, humiliation, severe mental anguish and emotional distress, he has incurred and will continue to incur medical expenses and other incidental expenses, and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mr. Bradley is thereby entitled to general and compensatory damages in amounts to be proven at trial.

27. As a further direct and proximate result of Defendant's violation of Titles I and V of the ADA, as described, Mr. Bradley has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Mr. Bradley.

28. Defendant's employment practices, as alleged above, deprived Mr. Bradley of equal employment opportunities and otherwise adversely affected his status as an employee and were the result of Mr. Bradley's disability or perceived disability.

29. Defendant's employment practices, as alleged above, were intentional and malicious, and done with intentional or reckless disregard for Mr. Bradley's federally protected rights.

## COUNT II

### DISABILITY DISCRIMINATION IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT, KRS CHAPTER 344

30. Plaintiff realleges each and every allegation set forth in paragraphs one through twenty-nine of the Complaint as if fully set forth herein.

31. Plaintiff is a qualified individual with a disability within the context of the KRCA as: (1) Plaintiff is a qualified individual with a disability; (2) Plaintiff was perceived and/or regarded by the Defendant as individual with a disability with limitations on his ability to effectively perform his job duties for the Defendant; and, (3) Plaintiff, either with or without reasonable accommodation, is qualified and capable of performing the essential functions of the job.

32. Defendant UPS is a "covered entity" within the meaning of the Kentucky Civil Rights Act, KRS Chapter 344.

33. The actions by UPS, as alleged above, constitute unlawful employment practices in violation of the Kentucky Civil Rights Act, KRS Chapter 344. All conduct alleged above occurred during a legally cognizable time period at Defendant's facility. The practices include, but are not limited to (1) Defendant's refusal to grant Mr. Bradley an accommodation for his perceived disability, (2) Defendant's refusal to provide on-call-lot training to Plaintiff, and (3) terminating Mr. Bradley's employment even though he was able to perform the essential functions of his position with or without reasonable accommodation. All of Defendant's actions were taken because of Mr. Bradley's disability or perceived disability.

34. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against him, Mr. Bradley has suffered and will continue to suffer pain, humiliation, severe mental anguish and emotional distress, he has incurred and will continue to incur medical expenses and other incidental expenses, and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mr. Bradley is thereby entitled to general and compensatory damages in amounts to be proven at trial.

35. As a further direct and proximate result of Defendant's violation of the KCRA, as described, Mr. Bradley has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Mr. Bradley.

36. Defendant's employment practices, as alleged above, deprived Mr. Bradley of equal employment opportunities and otherwise adversely affected his status as an employee and were the result of Mr. Bradley's disability or perceived disability.

## COUNT III

### RETALATION IN VIOLATION OF THE ADA AND THE KENTUCKY CIVIL RIGHTS ACT, KRS CHAPTER 344

37. Plaintiff realleges each and every allegation set forth in paragraphs one through thirty-six of the Complaint as if fully set forth herein.

38. The ADA and the KCRA prohibit retaliation against employees who oppose violations of disability discrimination provisions of the ADA and the KCRA.

39. Defendant UPS is a "covered entity" within the meaning of Title I of the Americans with Disabilities Act of 1990 set forth at 28 U.S.C. § 12111 and the Kentucky Civil Rights Act, KRS Chapter 344.

40. Plaintiff engaged in activity protected by the ADA and the KCRA when he opposed Defendant's unlawful and discriminatory employment practices by filing grievances and a Charge of Discrimination with the EEOC.

41. After Plaintiff opposed Defendant's unlawful discrimination, Plaintiff experienced retaliatory harassment at the hands of the Defendant, including, but not limited to, an increase in his work load from four (4) trucks to six (6) trucks, Defendant's refusal to provide Plaintiff the opportunity to take either the on-call lot test or the on-road test, being forced to defend his character from allegations of dishonesty, and ultimately terminating Plaintiff's employment.

42. Defendant's retaliatory conduct directed toward Plaintiff was sufficiently severe so as to dissuade a reasonable worker from making a complaint of discrimination.

43. There is a causal connection between Plaintiff Bradley's protected activity – filing a grievance and later EEOC Charges of Discrimination – and the retaliatory conduct of Defendant in violation of the ADA and KCRA.

44. Defendant UPS violated the ADA and the KCRA by engaging in a pattern of retaliatory conduct and harassment after Plaintiff Bradley engaged in activity protected by the ADA and the KCRA. As a direct and proximate result of the Defendant's unlawful conduct as alleged in this count of the Complaint, Plaintiff has suffered and will continue to suffer lost wages and benefits in the past and future, severe mental and emotional distress, loss of enjoyment of life, personal indignity and humiliation, and other non-pecuniary losses.

45. Further, as a direct and proximate result of Defendant's retaliation in violation of the ADA and the KCRA, as described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce his rights as established by federal and state law concerning the

terms and conditions of his employment relationship with Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

46. Defendant's retaliatory employment practices, as alleged above, deprived Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee.

## COUNT IV

### HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ADA AND THE KENTUCKY CIVIL RIGHTS ACT, KRS CHAPTER 344

47. Plaintiff realleges each and every allegation set forth in paragraphs one through forty-six of the Complaint as if fully set forth herein.

48. Plaintiff, Nathan Bradley, is member of a protected class, as he is a "qualified individual with a disability" within the context of the ADA and the KCRA as: (1) Plaintiff is a qualified individual with a disability; (2) Plaintiff was perceived and/or regarded by the Defendant as an individual with a disability with limitations on his ability to effectively perform his job duties for the Defendant; and, (3) Plaintiff, either with or without reasonable accommodation, is qualified and capable of performing the essential functions of the job.

49. Defendant UPS is a "covered entity" within the meaning of Title I of the Americans with Disabilities Act of 1990 set forth at 28 U.S.C. § 12111 and the Kentucky Civil Rights Act, KRS Chapter 344.

50. As alleged herein, Defendant, acting by and through its officers, managing agents, supervisors, and/or employees, subjected Plaintiff to unwelcome and highly offensive conduct that was so severe and pervasive that it altered the terms, conditions, and privileges of Plaintiff's employment in various ways, in substantial part because of his disability(ies), his record of

disability(ies), and/or Defendant regarding him as disabled, all in violation of the ADA and the KCRA.

51. Plaintiff Bradley found Defendant's intentional, deliberate and unwelcome acts, as described in this Complaint, highly offensive and considered these actions to create an intimidating, oppressive, offensive, and hostile work environment which interfered with Plaintiff's emotional and physical well-being. Moreover, a reasonable person would find Plaintiff's work environment at Defendant's facility to be hostile and abusive.

52. Defendant UPS had knowledge that its officers, managing agents, supervisors, and/or employees failed to adequately supervise, control, discipline, and/or otherwise penalize the conducts, acts, and failures to act as described above.

53. Defendant UPS failed to take all reasonable and necessary steps to eliminate disability discrimination from the workplace and prevent it from occurring in the future. Defendant's tolerating and condoning a hostile workplace towards Plaintiff Bradley violated the provisions of the ADA and the KCRA.

54. As a direct and proximate result of Defendant's violation of the ADA and the KCRA, as more fully described in this Complaint, the Plaintiff has suffered, and will continue to suffer, lost wages in the past and future, past and future medical expenses, severe mental and emotional distress, loss of enjoyment of life, personal indignity and humiliation, and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Nathan Bradley, demands judgment against Defendant UPS as follows:

1. An award of damages against the Defendant which reasonably compensates the Plaintiff for his (a) substantial mental anguish and emotional distress in the past and future; (b) humiliation and personal indignity (past and future); (c) loss of enjoyment of life; (d) loss of employment with Defendant; (e) future employment opportunities; (f) lost wages and benefits in the past and future; (g) liquidated damages; and (h) other pecuniary and non-pecuniary losses for the Defendant's violations of the provisions of the Americans with Disabilities Act of 1990 and/or the Kentucky Civil Rights Act as more fully alleged in the foregoing paragraphs of the Complaint;

2. For an award of punitive damages against the Defendant pursuant to the provisions of 42 U.S.C. § 1981a.

3. For a trial by jury;

4. For his costs herein expended, including a reasonable award for attorneys' fees as allowed by the provisions of the Americans with Disabilities Act of 1990 and/or the provisions of the Kentucky Civil Rights Act;

5. For prejudgment and post-judgment interest as provided for by law;

6. For leave to amend the pleadings as proof develops; and,

7. Any and all other relief to which the Plaintiff may appear to be entitled to under federal or state law.

Respectfully Submitted,

/s/ Ryan Greer
Charles W. Miller
T. Ryan Greer
**CHARLES W. MILLER & ASSOCIATES**
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, Kentucky 40202

P: (502) 583-2300  
F: (502) 583-2323  
E: rgreer@cwmassociates.com  
*Counsel for Plaintiff*